UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ADAM OSORIA                         :
                                    :           PRISONER
    v.                              :  Case No. 3:11-cv-637(WWE)
                                    :
WARDEN                              :

RULING ON PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Adam Osoria ("Osoria"), an inmate confined at the MacDougall-Walker Correctional Center in Suffield, Connecticut, brings this action pro se for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (2000). He challenges his conviction for robbery in the first degree, attempt to commit robbery in the first degree and larceny in the third degree as an accomplice. For the reasons that follow, the petition should be denied.

I.  Factual Background

The Connecticut Appellate Court determined that the jury reasonably could have found the following facts. On the evening of January 8, 2002, Osoria was at a housing project in New Haven, Connecticut, along with four other men: Jimmy Santos ("Santos"), Christin Lopez ("Lopez"), Jose Ramos ("Ramos") and a man identified only as "Jose." They walked to East Haven to steal a car. Osoria had a sawed-off shotgun with him. When they reached a condominium project in East Haven, the men forcibly entered a Honda Accord and Osoria drove the car away. State v. Osoria, 86 Conn. App. 507, 509, 861 A.2d 1207, 1208 (2004).

Later, Jose was driving the car on Orchard Street in New Haven when the men saw Robert Long ("Long") and Bruce Sherents ("Sherents") walking down the street with a marijuana cigar. When Jose pulled the car along side Long and Sherents, Osoria and Ramos exited the car wearing masks and gloves. They demanded Long and Sherents' possessions. Osoria struck Long with his fist and Ramos struck Sherents with the shotgun. Ramos took Sherents' pager. During the altercation, Lopez left the car and picked up the marijuana cigar from the sidewalk where Long or Sherents had dropped it. The five men then drove away. Id. at 509-10, 861 A.2d at 1208.

A Hamden police officer observed the car speeding through an intersection and began pursuit. The Honda reached speeds in excess of 100 miles per hour before crashing on a residential property. The five men ran from the vehicle to avoid capture. Osoria, Ramos, Santos and Jose hid in a nearby condominium complex until they no longer detected any police activity in the area. Lopez ran in another direction. When the four men emerged from hiding, they saw a Nissan Altima parked nearby with the engine running. The owner of the Nissan was a short distance away delivering newspapers. Osoria and the other three men got into the Nissan and Osoria drove the car away. Id. at 510, 861 A.2d at 1208.

Following a high speed chase through New Haven, West Haven and Milford, Osoria drove Ramos to his home and then abandoned

the Nissan in a public housing project in New Haven. Osoria, Santos and Jose ran from the car to avoid capture. Osoria was arrested several days later. Id., 861 A.2d at 1209-10.

II. Procedural Background

As a result of the events of January 8, 2002, the prosecutor filed two cases charging Osoria with robbery in the first degree, attempt to commit robbery in the first degree and two counts of larceny in the third degree as an accessory. The cases were consolidated for trial. Following a jury trial, Osoria was found guilty of all charges and sentenced to a total effective term of imprisonment of thirty-three years. Upon review by a three judge panel of the Sentence Review Division, the sentence was reduced to a sentence of thirty-three years, execution suspended after eighteen years, followed by five years probation. See State v. Osoria, No. CR02-00781, 2006 WL 337207 (Conn. Super. Ct. Jan. 24, 2006).

On direct appeal, Osoria challenged the sufficiency of the evidence presented at trial. The Connecticut Appellate Court affirmed the convictions and the Connecticut Supreme Court denied certification to appeal further. State v. Osoria, 86 Conn. App. 507, 509, 522, 861 A.2d 1207, 1209, 1216 (2004), cert. denied, 273 Conn. 910, 870 A.2d 1082 (2005).

In December 2004, Osoria filed a petition for writ of habeas corpus in state court. The amended petition asserted eight instances of ineffective assistance of counsel. The state court

divided these claims into five categories: (1) trial counsel failed to use a translator when meeting with Osoria and failed to provide a translator to assist Osoria in reviewing case materials; (2) trial counsel failed to present evidence that Osoria ran from the police because he was afraid and feared the police would assault him and that he suffered from a leg injury that prevented him from performing the acts alleged; (3) trial counsel failed to interview and call as witnesses several of the co-defendants; (4) trial counsel failed to communicate with Osoria regarding what was occurring in the case and did not explain Osoria's options before and during the trial; and (5) trial counsel failed to request a jury charge regarding co-defendant's testimony. Osoria v. Warden, No. TSR-CV05-40002515-S, 2008 WL 5511263, at *5 (Conn. Super. Ct. Dec. 12, 2008).

Following a hearing at which Osoria, trial counsel, the prosecutor and two co-defendants testified, the trial court denied the petition. Osoria raised only two issues on appeal, that trial counsel failed to present evidence of a leg injury and failed to utilize a translator. See Doc. #8, App. L, Record on Appeal of Habeas Court's Decision, at 3-5 & App. M, Petitioner's Brief on Appeal of the Habeas Court's Decision, at 4. The Connecticut Appellate Court dismissed the appeal without opinion and the Connecticut Supreme Court denied certification. Osoria v. Commissioner of Correction, 120 Conn. App. 902, 990 A.2d 391, cert. denied, 297 Conn. 904, 994 A.2d 1288 (2010).

4

III. <u>Standard of Review</u>

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a). A claim that a state conviction was obtained in violation of state law is not cognizable in the federal court. <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991).

The federal court cannot grant a petition for a writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Clearly established federal law is found in holdings, not dicta, of the Supreme Court at the time of the state court decision. <u>Carey v. Musladin</u>, 549 U.S. 70, 74 (2006). The law may be a generalized standard or a bright-line rule intended to apply the standard in a particular context. <u>Kennaugh v. Miller</u>, 289 F.3d 36, 42 (2d Cir.), <u>cert. denied</u>, 537 U.S. 909 (2002).

A decision is "contrary to" clearly established federal law

where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. Davis v. Grant, 532 F.3d 132, 140 (2d Cir. 2008), cert. denied, ___ U.S. ___, 129 S. Ct. 1312 (2009). The state court decision must be more than incorrect; it also must be objectively unreasonable, which is a substantially higher standard. Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

When reviewing a habeas petition, the federal court presumes that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011) (standard for evaluating state-court rulings where constitutional claims have been considered on the merits and which affords state-court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). In addition, the federal court's review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Id.

IV. Discussion

Osoria challenges his conviction on two grounds: insufficiency of the evidence and ineffective assistance of trial counsel for failing to request a jury instruction on accomplice liability. The respondent argues that the petition should be denied because the state court decisions on these issues were neither contrary to nor an unreasonable application of clearly established federal law.

A. Sufficiency of the Evidence

The Due Process Clause protects a criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. Fiori v. White, 531 U.S. 225, 228-29 (2001). Federal courts, however, do not relitigate state trials and make independent determinations of guilt or innocence. See Herrera v. Collins, 506 U.S. 390, 401-02 (1993).

When a federal habeas petitioner challenges the sufficiency of the evidence used to convict him, the court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The court must defer to the trier of fact and presume that the trier of fact resolved any conflicts in favor of the prosecution. Thus, constitutional sufficiency of the evidence review is sharply limited. Wright v. West, 505 U.S. 277, 296 (1992).

7

Credibility determinations, for example, generally are beyond the scope of review. See Schlup v. Delo, 513 U.S. 298, 319 (1995).

When considering a sufficiency of the evidence claim, the federal court looks to state law to determine the elements of the crime. Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). The federal court is bound by a state court's interpretation of state law. Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

Although the Connecticut Appellate Court did not cite any federal statutes when articulating the standard of review for insufficiency of the evidence claims, the state court's analysis conforms to the federal standard. Thus, the decision of the Connecticut Appellate Court is not contrary to clearly established federal law. See Early v. Packer, 537 U.S. 3, 8 (2002) (holding that state court need not be aware of nor cite relevant Supreme Court cases, so long as the reasoning and decision do not contradict the applicable law).

The court considers below whether the Connecticut Appellate Court's analysis of the sufficiency of the evidence challenges to the four charges reasonably applied clearly established federal law.

### 1. Robbery in the First Degree of Bruce Sherents

The Connecticut Appellate Court set forth the elements of robbery in the first degree. The state was required to prove that Osoria or another participant in the crime was in the course of committing a robbery and that Osoria or the other participant

8

displayed or threatened the use of a firearm.  A robbery is defined as using or threatening the immediate use of physical force upon another person in the course of committing a larceny.  The force is intended to prevent or overcome resistance to taking the property or to compel the owner to surrender the property.  Larceny is defined as wrongfully taking property from an individual with the intent to deprive the individual of the property.  Osoria, 86 Conn. App. at 511-12, 861 A.2d at 1210.

Santos testified for the state.  He described the events of the evening including Osoria's part in the robbery and stated that Ramos was carrying the shotgun.  Sherernts and Long, the victims of the robbery, testified at the trial.  They identified the car and described the robbery.  Although they could not identify Osoria because the men were wearing hooded sweatshirts, masks and gloves, they did describe the height of the unarmed man.  Id. at 512-14, 861 A.2d at 1210-11.

Osoria noted that the victims could not identify him and that the only evidence specifically linking him to the crimes came from Santos.  He challenged Santos' testimony as not credible and, therefore, insufficient evidence to support his conviction.  The Connecticut Appellate Court noted that the court must defer to the credibility determination of the trier of fact.  In this case, the jury made its credibility determination after observing the conduct and demeanor of the witnesses.  Id. at 514-15, 861 A.2d at 1211-12.  Osoria has presented no evidence

9

showing that this determination was clearly erroneous. The state court's treatment of this challenge comports with federal law. See Schlup v. Delo, 513 U.S. 298, 319 (1995) (credibility determinations are beyond the scope of review on a sufficiency of evidence claim); Herrera v. Collins, 506 U.S. 390, 401 (1993) (holding that habeas court must defer to assessments of weight of the evidence and credibility determinations of witnesses made by the jury and may not substitute its view of the evidence for that of the jury).

Osoria asserted three other challenges to support his contention that the evidence was insufficient to support the robbery charge. First, he argued that there was no evidence to show that he used the shotgun. The Connecticut Appellate Court dismissed this argument because the state statute required only that one of the participants in the robbery display or use a firearm. Because Ramos displayed and used the shotgun, this element was satisfied. Osoria, 86 Conn. App. at 515, 861 A.2d at 1212.

Second, Osoria claimed that the value of the marijuana cigar, the initial focus of the robbery, did not rise to the level of the statutory definition of the crime. The Connecticut Appellate Court dismissed this argument because the definition of robbery in the first degree does not include any minimum monetary value of the stolen property. Id. at 515-16, 861 A.2d at 1212.

Finally, Osoria noted that Long testified that when Osoria

saw the other man strike Sherents with the shotgun, Osoria told the man not to shoot Sherents. Osoria argues that this statement demonstrated renunciation. The Connecticut Appellate Court noted that Osoria had not raised a defense of renunciation at trial and, even if he had, renunciation was not applicable. The fact that Osoria asked his companion not to shoot the victim does not support a finding that he renounced his participation in the robbery. Id. at 516, 861 A.2d at 1212-13.

In its treatment of these three challenges, the Connecticut Appellate Court explained that there was no basis for any of the challenges under Connecticut law. The federal court is bound by the state court's interpretation of state law. Bradshaw, 546 U.S. at 76. Osoria fails to demonstrate that the Connecticut Appellate Court's treatment of this claim was an unreasonable application of clearly established federal law. The petition for writ of habeas corpus is denied as to this claim.

2. Attempt to Commit Robbery in the First Degree of Robert Long

The Connecticut Appellate Court explained that to support a conviction on the charge of attempt to commit robbery in the first degree, the state had to show that Osoria acted with the mental state required for the commission of robbery in the first degree and intentionally did something that was a substantial step in a course of conduct that would result in the commission of the crime of robbery in the first degree. The Connecticut

Appellate Court relied on the testimony of Long, Sherents and Santos to support this claim.

The court noted that Osoria's challenge again was based on his contention that Santos' testimony was not credible. The Connecticut Appellate Court rejected Osoria's challenge to Santos' testimony in its analysis of the previous claim. Thus, the court rejected the challenge to the attempted robbery charge as well. Osoria, 86 Conn. App. at 516-17, 861 A.2d at 1213. For the reasons stated above, the court concludes that the Connecticut Appellate Court's treatment of this claim comports with federal law. The petition is denied as to this claim.

    3.    <u>Larceny in the Third Degree as an Accessory re Honda</u>

To prove the charge of larceny in the third degree as an accessory, the state was required to show that the property in question was a motor vehicle valued at $5,000 or less. In addition, the state had to prove that Osoria intended to deprive another person of property and solicited or intentionally aided another in committing the larceny. Id. at 517-18, 861 A.2d at 1213.

The Connecticut Appellate Court determined that the testimony at trial supported the charge. The owner of the Honda testified that she did not know Osoria or any other person charged with participating in the larceny and did not give anyone permission to take her car. Santos testified that the men walked

12

to East Haven to steal a car, preferably a Honda. The men used a screwdriver to break into and start the car and Osoria drove the car away. Again, Osoria challenged the credibility of Santos' testimony and argued that the state failed to present any fingerprint evidence showing that he had been in or had driven the car. Id. at 518 & n.6, 861 A.2d at 1213-14 & n.6.

The Connecticut Appellate Court explained that Santos' testimony provided sufficient evidence to support the conviction and noted that the state was not required to present fingerprint evidence to prove its case. Also, the state did not have to prove that Osoria broke into or started the car. The evidence supports a determination that Osoria "solicited, requested, commanded, importuned or intentionally aided" in the commission of the larceny. This was all the state was required to prove. Id. at 518-19, 861 A.2d at 1214. The Connecticut Appellate Court properly construed the evidence in favor of the prosecution and reasonably applied federal law. The petition for writ of habeas corpus is denied as to this claim.

> 4. Larceny in the Third Degree as an Accessory re Nissan

The Connecticut Appellate Court also concluded that the evidence presented at trial was sufficient to support Osoria's conviction for larceny in the third degree as an accessory with regard to the Nissan. Santos testified that he, Osoria and two others observed the Nissan unattended with exhaust coming from

13

the muffler. Osoria got into the driver's seat and they drove away. Although the owner chased them and told them to stop, they did not stop the car. They removed the hubcap covers and discarded newspapers that were in the car. The owner of the Nissan testified that he often left his car unlocked and running while he made frequent stops delivering newspapers. He estimated the value of the Nissan as between $3,000 and $4,000. Id. at 519-21, 861 A.2d at 1214-15.

Osoria argued that the evidence was insufficient to support this charge because the car was running with the keys in the ignition and there was no testimony as to the exact value of the car. The Connecticut Appellate Court explained that the fact that the car was unlocked with the keys in the ignition did not negate Osoria's participation in a plan to deprive the owner of his vehicle. In addition, the statute required only that the property be valued at $5,000 or less. The owner was competent to testify regarding the value of his car and his estimate was within the statutory requirement. As discussed above, the Connecticut Appellate Court concluded that the jury could have found Santos credible and the state properly relied on Santos' testimony to establish the elements of the crime. Id. at 521-22, 861 A.2d at 1215-16. Again, the Connecticut Appellate Court reasonably applied federal law in analyzing this claim. The petition for writ of habeas corpus is denied on this claim.

B. <u>Ineffective Assistance of Counsel</u>

1. <u>Exhaustion of State Court Remedies</u>

As an initial matter, the respondent notes that Osoria failed to exhaust his state court remedies on his ineffective assistance of counsel claim.

A prerequisite to habeas corpus relief under 28 U.S.C. § 2254 is the exhaustion of available state remedies. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). The Second Circuit requires the district court to conduct a two-part inquiry. First, a petitioner must present the factual and legal bases of his federal claim to the highest state court capable of reviewing it. Second, he must have utilized all available means to secure appellate review of his claims. See <u>Galdamez v. Keane</u>, 394 F.3d 68, 73-74 (2d Cir.), <u>cert. denied</u>, 544 U.S. 1025 (2005).

Before the federal court will consider a claim of ineffective assistance of counsel, the allegations must have been presented to the state courts to allow those courts "the opportunity to consider *all* the circumstances and the cumulative effect of the claims as a whole." <u>Caballero v. Keane</u>, 42 F.3d 738, 740-41 (2d Cir. 1994) (internal quotation marks omitted; emphasis in original). Thus, Osoria must present all of the examples of ineffective assistance to the state courts at all levels of review.

Although Osoria included this ineffective assistance of

15

counsel claim in his amended state habeas petition, he did not seek appellate review of the denial of this claim. Thus, he has not exhausted his state court remedies on the claim. See Jones v. Keane, 329 F.3d 290, 295 (2d Cir.) (claims presented to state courts must be the "substantial equivalent" of claims raised in federal habeas petition), cert. denied, 540 U.S. 1046 (2003).

Despite the fact that the claim is not exhausted, this court retains the discretion to excuse the failure to exhaust and consider the merits of the claim if the court intends to deny the petition in its entirety. Rhines v. Weber, 544 U.S. 269, 277 (2005); 28 U.S.C. § 2254(b)(2). As the court determines below that Osoria's ineffective assistance of counsel claim is without merit, the court will excuse Osoria's failure to exhaust his state court remedies on this claim.

2. Failure to Request Charge on Accomplice Liability

An ineffective assistance of counsel claim is reviewed under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail, Osoria must demonstrate, first, that counsel's conduct fell below an objective standard of reasonableness established by prevailing professional norms and, second, that this deficient performance caused prejudice to him. Id. at 687-88. Counsel is presumed to be competent. Osoria bears the burden of demonstrating unconstitutional representation. United States v. Cronic, 466 U.S. 648, 658 (1984).

16

To satisfy the prejudice prong of the Strickland test, Osoria must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different;" the probability must "undermine confidence in the outcome" of the trial. Strickland, 466 U.S. at 694. The court evaluates counsel's conduct at the time the decisions were made, not in hindsight, and affords substantial deference to counsel's decisions. Rompilla v. Beard, 545 U.S. 374, 381 (2005). To prevail, Osoria must demonstrate both deficient performance and sufficient prejudice. Thus, if the court finds one prong of the standard lacking, it need not consider the remaining prong.

The court is not required to consider only a decision from the state's highest court when reviewing federal habeas claims. The court analyzes the last reasoned state court decision to determine whether the decision is contrary to or an unreasonable application of federal law. Neither the Connecticut Appellate Court nor the Connecticut Supreme Court addressed the merits of Osoria's ineffective assistance of counsel claim. Thus, the court considers the decision made by the trial court following the habeas hearing. See Ylst v. Nunnemaker, 501 U.S. 797, 804 (1991); see also, e.g., McKinney v. Artuz, 326 F.3d 87, 89 (2d Cir. 2003) (reviewing a trial court's denial of peremptory challenge under 28 U.S.C. § 2254(d)(1)).

Osoria argues that trial counsel was ineffective because he

17

failed to request a jury charge on accomplice liability. In analyzing this claim, the state court identified the standard established in Strickland as the applicable law and applied that standard to the facts. See Osoria, 2008 WL 5511263, at *5. Because the state court applied the correct legal standard, the state court decision is not contrary to federal law. Accordingly, this court will consider whether the Connecticut Superior Court reasonably applied the law to the facts.

The state habeas court found the following facts. Trial counsel's usual practice was to submit proposed jury instructions. He did not recall whether he did so in this case, but remembered a charging conference with the court. The state court instructed the jury on what they should consider when evaluating and using accomplice testimony. Trial counsel testified that he believed the charge given properly informed the jury of the applicable law. Id., 2008 WL 5511263, at *4.

A jury charge in a state trial generally is a matter of state law. Thus, claims regarding the jury charge are not reviewable on federal habeas corpus absent a showing that the alleged errors were so serious that they deprived the petitioner of a federal constitutional right. The relevant question in a habeas proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether the instruction is undesirable or erroneous. Waddington v. Sarausad, 555 U.S. 179, 191 (2009)

(citations omitted).  The Second Circuit has held that when a trial court's instruction is legally correct as given, the failure of counsel to request additional instruction is not deficient performance.  Deficient performance arises only when the charge as given contains "clear and previously identified errors."  Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001).

The charge given at Osoria's trial specifically cautioned the jury to be mindful of the motivation of the accomplice in testifying and to weigh his credibility in light of his participation in the crimes.  The state habeas court determined that the instruction given "mirrored" an accomplice charge that was approved by the Connecticut Supreme Court and concluded that Osoria failed to demonstrate either deficient performance or prejudice.  Osoria, 2008 WL 5511263, at *9.

Because the charge was a correct statement of Connecticut law, it contained no errors and trial counsel did not exhibit deficient performance by failing to request an additional charge.  This court concludes that the state court decision was an objectively reasonable application of the Strickland standard.  The petition for writ of habeas corpus is denied on this ground.

V.  Conclusion

The petition for writ of habeas corpus [**Doc. #1**] is **DENIED**. The court concludes that Osoria has not demonstrated the denial of a constitutional right. Accordingly, a certificate of appealability will not issue. The Clerk is directed to enter judgment and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of November 2011.

Warren W. Eginton
Senior United States District Judge